UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:12-cr-0375 TLN AC P |
| Respondent, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ANDRE ANTONIO WALTERS, | |
| Movant. | |

Movant, a federal prisoner proceeding through counsel, brings a motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. ECF No. 352. Movant has also filed a motion to amend. ECF No. 369. The United States has opposed the underlying § 2255 motion and moved to dismiss the additional claim included in the motion to amend. ECF No. 388. Movant did not file a reply, or an opposition or statement of non-opposition to the government's motion to dismiss.

I.     BACKGROUND

    A. Pretrial Proceedings

Movant Andre Antonio Walters was one of five defendants charged with mail fraud in a 20-count indictment alleging a large-scale unemployment insurance fraud scheme. ECF No. 1. Walters was charged in Counts 17-20. Id. According to the government, he was a "manager" and recruiter in a scheme that submitted false claims to the California Employment Development

1

Department (EDD) between approximately February 2008 and January 2011. The indictment alleged a total loss over five million dollars. Id. at 3.

Prior to trial, the government extended a written plea offer, which was rejected. Details of the offer and the circumstances of its rejection are set forth below in discussion of movant's claims.

B. The Trial

1. The Government's Case

Walters' case went to trial starting on August 2, 2016. The government called approximately 18 witnesses (ECF Nos. 244, 249, 250, 251, 254), ten of whom were scheme participants recruited and managed by Walters or by those he recruited. Witnesses described Walters accompanying them to cash their ill-gotten unemployment benefit checks, occasionally with fellow manager Gregory "Redd" Martin. PSR ¶ 8. Other times, Walters directed claimants to deposit money into an account he identified or to give him cash. Witnesses further detailed that Walters would either split the proceeds with them or occasionally keep the entirety himself. Several witnesses testified that Walters not only recruited them to apply for fraudulent unemployment benefits, but also encouraged them to recruit additional fraud participants.

2. The Defense

The defense called five witnesses, including Walters. ECF No. 254. Walters testified that he was not a manager in a fraud scheme, that he did not know that the signup sheets he admittedly distributed were linked to improper or illegal activity, and that he did not recruit claimants to apply for, nor did he split any proceeds of, unemployment benefits. Walters denied having met many of the fraud participants who testified against him, and explained that the phone calls he had with these witnesses could have resulted from someone else using his phone.

3. Outcome

The jury returned guilty verdicts for all four counts of mail fraud on August 15, 2016. ECF No. 257, 264.

The presentence report (ECF No. 278) recommended an adjustment for obstruction of justice (based upon Walters' false testimony at trial), recommended no adjustment for acceptance

of responsibility, and found that the reasonably foreseeable loss amount was $5,263,934.  PSR ¶¶ 16, 17, 21.  The PSR recommended that the Court impose a sentence of 97 months, which was the bottom of the Guidelines range as calculated by the Probation Officer.  ECF No. 278.  The defense objected to the loss calculation and role adjustment, and provided mitigating information.  ECF No. 280.  The government joined the probation recommendation of 97 months.  On June 15, 2027, the court imposed a sentence of 73 months of imprisonment (a downward variance from the applicable Guidelines range of 97–121 months) and 36 months of supervised release,[1] and ordered Walters to pay $5,263,934 in restitution.  ECF Nos. 301, 304, 310.

        4. Appeal

Walters appealed.  He challenged the district court's loss calculations, argued the sentence was substantively unreasonable, argued the decision not to continue the sentencing hearing again was an abuse of discretion, and claimed the restitution amount was miscalculated.  The Ninth Circuit affirmed in a memorandum decision filed December 24, 2019.  ECF No. 350 at 2-6.  The mandate issued on January 15, 2020.  Id. at 1.

        5. Post-Conviction Proceedings

The instant motion under § 2255 was filed on March 23, 2021.  ECF No. 352.  On July 6, 2021, movant filed a motion for compassionate release.  ECF No. 355.  That motion was denied.  ECF No. 366.  Movant then filed a supplemental motion for compassionate release, ECF No. 370, which was also denied, ECF No. 373.  Movant next moved for reconsideration, ECF No. 374, and that motion was denied, ECF No. 383.  Following resolution of those matters, the undersigned ordered the government to respond to both the original § 2255 motion and a motion to amend which had been filed during the course of the First Step Act litigation.  ECF No. 384.  The government did so.  ECF No. 388.

////

////

---

[1] The TSR portion of the sentence was ordered to become unsupervised if movant were to be deported.  ECF No. 304 at 3.  His immigration status is at issue on the claim presented in the motion to amend.

## II. THE MOTION AND AMENDMENT

The original § 2255 motion presents a single claim of ineffective assistance of counsel at sentencing. Movant alleges that court-appointed trial counsel, Michael Chastaine, provided constitutionally inadequate representation by failing to call three witnesses to testify at sentencing: movant's high school special education teacher and two former basketball teammates. ECF No. 352 at 4. The motion to amend presents a second ineffective assistance claim, based on counsel's advice regarding the rejected plea agreement. ECF No. 369. Movant, who is a Jamaican citizen, alleges that counsel incorrectly told him the plea agreement would result in deportation, exclusion and/or denied entry into the United States, and that the only way to avoid adverse immigration consequences was to go to trial and obtain not guilty verdicts. ECF No. 369.

The United States contends that the proposed new claim is time-barred because it does not relate back to the original § 2255 motion, and that both ineffective assistance claims are meritless. ECF No. 388.

## III. STANDARDS

### A. Review Under 28 U.S.C. § 2255

A federal prisoner making a collateral attack on the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under section 2255, the district court may grant relief if it concludes that a sentence violates the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). Both the grounds for relief and the scope of the remedy in a section 2255 proceeding are identical to those available to state prisoners under 28 U.S.C. § 2254, the federal habeas corpus statute. Davis v. United States, 417 U.S. 333, 343-44 (1974).

The district court must grant a hearing to determine the validity of a petition brought under section 2255, unless the record conclusively shows that the prisoner is entitled to no relief. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). In other words, an evidentiary hearing is required if (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot

conclusively show that the petitioner is entitled to no relief. United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004). Relief may be summarily denied without a hearing if the motion contains no more than conclusory allegations. United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986); see also Howard, 381 F.3d at 879.

### B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). To establish a constitutional violation based on ineffective assistance of counsel, a movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). In assessing counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Id. at 689. Courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Prejudice means that the error actually had an adverse effect on the defense. Id. at 693. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The court need not address both prongs of the Strickland test if the movant's showing is insufficient as to one prong. Id. at 697.

The standards articulated in Strickland apply in the plea context. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). Counsel must adequately inform the defendant so that he has "the tools he needs to make an intelligent decision" regarding the plea offer. Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002). Counsel's advice is deficient if that advice is "so incorrect and so insufficient that it undermine[s] [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." Id. at 880 (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)). Objectively unreasonable advice regarding the immigration

5

consequences of a plea can constitute deficient performance within the meaning of Strickland. Padilla v. Kentucky, 559 U.S. 356, 366 (2012). Specifically, to perform as the counsel contemplated by the Sixth Amendment, "counsel must inform her client whether his plea carries a risk of deportation." Id. at 374.

The Supreme Court has specified the standard for prejudice in the context of a rejected plea offer:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it…. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Cf. Glover v. United States, 531 U.S. 198, 203, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

Frye, 566 U.S. at 147.

IV. DISCUSSION

    A. Ineffective Assistance at Sentencing

        1. Movant's Allegations and Pertinent Record

Movant alleges that trial counsel unreasonably failed to call witnesses at sentencing:

> Trial counsel failed to call Tresalyn Waller, a special education teacher at Mayfair High School in Lakewood, California who taught Andre Walters from the 9th-12th Grades, to testify at sentencing. If called as a witness, she would have testified that Andre Walters has a processing disorder. He cannot read or understand written documents presented to him. While at Mayfair High School, Andre Walters was administered the Woodcock-Johnson and Wide Range Achievement Tests. Andre Walter's reading and written language scores showed that he could read and write at the level of a person in First Grade, and his math score showed that he understood math at a Second Grade level.
>
> Trial counsel also failed to call Darell Putnam and Tony Roberts, both teammates of Andre Walters with the professional basketball team LA Push who attended the recruitment meeting called by Donye Mitchell to offer the players unemployment benefits through one of his companies in order for the players to receive

6

> compensation, to testify at the sentencing hearing. Both would have testified that Andre Walters had nothing to do with the presentation made to the players, nor did he recruit or encourage them to participate in anyway in the scheme at issue. Putnam described Andre Walters as a simple and naïve person, not sophisticated in any way.

ECF No. 352 at 4.

The section 2255 motion is supported by declarations from Waller, Putnam and Roberts which confirm the testimony these witnesses would have provided. ECF No. 352-2 (Declaration of Tresalyn Waller); ECF No. 352-4 (Declaration of Darrell Putnam); ECF No. 352-5 (Declaration of Tony Roberts). Movant also submits educational records (ECF No. 353-2) in support of his theory that counsel was ineffective in failing to develop and present evidence of "the full extent of his learning disability." ECF No. 352-1 at 5.

The record of this case reflects that the PSR included information about movant's learning disability. ECF No. 278. Specifically, the PSR reported that Walters had an Individual Education Plan (records of which had been provided by defense counsel) that reported a weakness in verbal expression and auditory processing, although movant graduated from high school. Id., ¶ 52. The PSR noted that Walters said he could only read at a third or fourth grade level during college, and that he is a visual and hands-on learner. Id., ¶¶ 54-55. The PSR also noted that defendant's ex-girlfriend, with whom he has two children, testified at trial that she believes Walters has learning disabilities, is not a good reader, and has trouble spelling in text messages. Id., ¶ 57.

The defense sentencing memorandum argued movant's "significant learning disabilities" as a mitigating factor. ECF No. 280 at 3, 8. Counsel attached a memo of a telephone interview conducted with Tresalyn King, movant's "special day class teacher" and mentor, who reported that movant had learning disabilities and "family issues." ECF No. 280-3 at 1. Counsel also attached educational records documenting movant's academic difficulties. Id. at 2-6.

At the sentencing hearing, the court considered the parties' arguments about movant's learning disability (among other factors) as a possible basis for a variance below the applicable Guidelines range. ECF No. 310 (transcript of sentencing hearing) at 36-37, 40, 45.

////

2. Analysis

There is no need for a hearing on this claim because the petition, files, and record of the case conclusively show that the petitioner is not entitled to relief. See Howard, 381 F.3d at 877. The sentencing court was fully aware that movant had learning disabilities. Both the PSR and the defense memorandum brought this to the court's attention, and the issue of movant's learning disabilities was addressed at the sentencing hearing in the context of the defense request for a downward departure. See ECF No. 310 at 36-37, 40, 45. Moreover, the materials considered by the court included the *same* academic transcript and test results that movant now proffers in support of his § 2255 motion.[2] And defense counsel also brought to the court's attention that movant's former teacher Tresalyn King (or Waller)[3] reported that he had learning disabilities and had received special support services. Defense counsel cannot have performed unreasonably in failing to develop and present evidence that he did in fact present. And to the extent if any that the proffered declaration of Ms. Waller includes additional information, that detail is of such negligible significance that there is no reasonable likelihood it would have made any difference to the sentence imposed.

As for the proffered testimony of Darell Putnam and Tony Roberts, both the jury and the sentencing judge considered and rejected the defense theory that petitioner was an unwitting dupe in Donye Mitchell's scheme. As U.S. District Judge Troy L. Nunley stated at sentencing:

> If you recall what that defense was, part of his defense was based upon the fact he couldn't read, he had a learning disability, and some of the forms he was giving to others to fill out because he didn't know what they were. The jurors rejected that, and by rejecting that, they found that he did, in fact, know what he was doing. They found whatever intent was required to commit these offenses, the defendant met.

ECF No. 310 at 48. The proffered Putnam and Roberts testimony would have provided no basis for a different conclusion, so the failure to offer it cannot have been unreasonable or prejudicial.

---

[2] Compare ECF No. 280 (defense sentencing memorandum) at 2-6 with ECF No. 352-3 (exhibit to § 2255 motion) at 1, 4-6. Although the scanned copy of the academic transcript submitted for sentencing is largely illegible as available on the docket, the dates, signatures, and guardian identifying information are clear and they demonstrate that these are in fact the same records.

[3] The unusual first name and identical descriptions of the teacher-student relationship indicate that this is the same person.

Judge Nunley imposed a below Guidelines sentence in this case. Id. at 49. The bottom of the applicable Guidelines range was 97 months, and the court imposed a 73 month term of imprisonment. ECF No. 310 at 36, 49. That is a two year variance. At allocution the defendant insisted on his lack of criminal intent—essentially the theory that Putnam and Roberts would have supported—and protested that the trial had been unfair, and Judge Nunley responded by saying: "You know, your statement that you just made before this court right now, you are who I thought you are. You are a liar, you are a cheat, and you stole money. That's just what you stood here and told me." Id. at 54. In light of the record of this case as a whole, there is no reasonable possibility that movant would have received an even greater sentencing variance had defense counsel presented the testimony of Darell Putnam and Tony Roberts or additional evidence of learning disabilities.

For all these reasons, the sentencing ineffectiveness claim should be summarily denied.

### B. Ineffective Assistance in Plea Bargaining

#### 1. Movant's Allegations and Pertinent Record

In his motion to amend (ECF No. 369),[4] movant presents a claim that his Sixth Amendment rights were violated when trial counsel inaccurately advised him that the proposed plea agreement would result in his deportation, exclusion, and/or denial of reentry into the United States. Movant, a Jamaican citizen, alleges that he told counsel early on that his primary concern was avoiding an outcome that would result in deportation. The government offered a plea agreement in which movant would plead guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. In exchange for a guilty plea on Count 18, the government would dismiss the other counts against movant and recommend a sentence at the low end of the applicable

---

[4] The motion contains no discussion of the standards for amendment under Fed. R. Civ. P. 15(a), although it preemptively addresses the issue of timeliness under Rule 15(c)(1). Id. Because the proposed amendment was submitted prior to the United States' responsive pleading, leave of court was not required and movant could have simply filed an Amended Motion to Vacate containing both claims. The government's response to the amended claim is accordingly in the form of a motion to dismiss, rather than opposition to amendment. ECF No. 388. The distinction makes no difference to the outcome, as the propriety of dismissal and the futility of amendment are co-extensive and follow from the same analysis.

guidelines range and a reduction for acceptance of responsibility. ECF No. 369-3 (proposed plea agreement). Counsel told movant that the deal would result in two years of imprisonment but would also result in his deportation. ECF No. 369 at 2-3.

Movant alleges that counsel told him that the adverse immigration consequences were unavoidable under the plea agreement, because he received more than $10,000.00 in Employment Development Department benefits and the restitution amount owed as a result of the plea agreement also would be more than $10,000.00.[5] Counsel explained that he had been unable to negotiate a plea agreement in which the government would agree that the restitution amount was under $10,000.00. Movant rejected the offer because his priority was avoiding deportation, and counsel told him that a not guilty verdict at trial was the only way to achieve that goal. Id.; see also ECF No. 369-1 (Declaration of Andre Walters).

Movant alleges that counsel gave incorrect advice about the immigration consequences of the available plea agreement, and that the favorable agreement would have been accepted absent counsel's error.

2. Timeliness

The United States moves for dismissal of the additional claim as untimely. ECF No. 388. The statute of limitations for § 2255 motions is one year, which runs from the date that the judgment of conviction became final. United States v. Buckles, 647 F.3d 883, 887 (9th Cir. 2011); 28 U.S.C. § 2255(f). The Court of Appeals affirmed movant's conviction on December 24, 2019, and he did not seek rehearing or certiorari in the U.S. Supreme Court. Accordingly, the conviction became final on March 23, 2020, ninety days after affirmance. See Clay v. United States, 537 U.S. 522, 532 (2003); S.Ct. Rule 13. The initial § 2255 motion was timely filed within one year of finality, but the claim of ineffective assistance in plea bargaining was filed on August 23, 2021, five months after the March 23, 2021 deadline expired.

Movant argues that the claim is nonetheless timely because it "relates back" to the original

---

[5] Federal immigration law provides that any "alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. §1227(a)(2)(A)(iii). In this context, an "aggravated felony" includes offenses that involve fraud or deceit in which the loss to the victim or victims exceeds $10,000.00. 8 U.S.C. §1101(a)(43)(M)(i).

10

§ 2255 motion. ECF No. 369 at 5-7. Rule 15(c)(1)(B), Fed. R. Civ. P., provides that an amendment to a pleading relates back to the date of the original pleading when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out… in the original pleading." The relation back doctrine applies where the timely and late-filed claims arise from "a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). It does not save claims supported by facts that differ in both time and type from those set forth in the original pleading. Id. at 650. The "time and type" language in Mayle refers not to the claims or grounds for relief, but to the facts asserted that support those grounds. Nguyen v. Curry, 736 F.3d 1287, 1297 (9th Cir, 2013).

In Mayle itself, the Supreme Court held that a habeas claim challenging a pretrial event and a claim challenging a trial event do not arise from a common core of operative facts just because they related to the same trial, conviction, or sentence. Mayle, 545 U.S. at 648, 650.[6] Following Mayle, the Ninth Circuit held in Hebner v. McGrath, 543 F.3d 1133, 1139 (9th Cir. 2008), that a claim related to evidence admitted at trial and a claim related to jury instructions after the close of evidence "depend[ed] upon separate transactions and d[id] not share a common core of operative fact." Movant is not entitled to different result just because his original and late-filed claims both allege the ineffective assistance of counsel. See Nguyen, 736 F.3d at 1297. Because one claim is based on counsel's pre-trial conduct in relation to a proposed plea agreement, and the other is based on counsel's performance in relation to sentencing, the claims arise from different facts. See United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based on an entirely distinct type of attorney misfeasance."); United States v. Duffus, 174 F.3d 333, 337-38 (3d Cir. 1999) (claim of ineffective assistance of counsel for failing to move to suppress evidence did not relate back to claim of ineffective assistance of counsel for failing to contend on appeal that evidence was insufficient to support conviction).

---

[6] Mayle reversed the Ninth Circuit and abrogated circuit law that had previously interpreted Rule 15's "conduct, transaction, or occurrence" language broadly.

Because the late-filed claim does not relate back to the claim of the original petition, which is based on an entirely distinct type of alleged ineffective assistance which occurred at different time, it is time-barred. The motion to dismiss should be granted.

## CONCLUSION

For all the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. The motion to vacate under 28 U.S.C. § 2255, ECF No. 352, be DENIED;
2. The government's motion to dismiss, ECF No. 388, be GRANTED; and
3. Movant's motion to amend (ECF No. 369) be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 3, 2024

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE